UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 19-76-DLB-CJS

NEXT F/X, INC.                                                                         PLAINTIFF

v.                    **MEMORANDUM OPINION AND ORDER**

DHL AVIATION AMERICAS, INC., et al.                    DEFENDANTS

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on a Motion to Dismiss (Doc. # 10) filed by Defendant Old Dominion Freight Line, Inc. The Motion has been fully briefed, (Docs. # 11 and 12), and is now ripe for the Court's review. For the reasons set forth herein, the Motion to Dismiss is **granted in part** and **denied in part**.

I.     FACTUAL AND PROCEDURAL BACKGROUND

On May 21, 2018, Plaintiff Next F/X purchased 615 pieces of "pyrotechnic articles" ("the goods") from Pirotecnia Ricardo Caballer, S.A. ("PRC"), a Spanish supplier. (Doc. # 1 at ¶¶ 7–8). PRC arranged for Defendant DHL Aviation Americas, Inc. ("DHL") to transport the goods from the airport in Valencia, Spain ("VLC") to the Cincinnati Northern Kentucky International Airport ("CVG").[1] *Id.* at ¶ 8. Two Master Air Waybills[2] were issued for the shipment (one consisting of 259 pieces and another consisting of 356 pieces). *Id.*

---

[1]     CVG is located within the Eastern District of Kentucky. 28 U.S.C. § 97.

[2]     A waybill is "[a] document acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods." *Waybill*, BLACK'S LAW DICTIONARY (11th ed. 2019). Unsurprisingly, an air waybill is "[a] waybill for transportation by air." *Air Waybill*, BLACK'S LAW DICTIONARY (11th ed. 2019).

1

at ¶ 10. Once the goods arrived at CVG, Coppersmith Global Logistics ("Coppersmith")— a freight broker— was to ensure that the goods cleared customs. *Id.* at ¶ 9. The goods arrived at CVG on May 29, 2018[3]; at that point Defendant Old Dominion Freight Lines ("Old Dominion") was contracted by Next F/X, through Coppersmith, to pick up the goods and transport them to a Next F/X facility in Columbus, Montana. *Id.* at ¶¶ 9, 11–12.

As instructed, on June 8, 2018, an Old Dominion truck went to the DHL warehouse near CVG to retrieve the goods for shipment to Montana. *Id.* at ¶ 12–13. It is alleged that, at some point and for unknown reasons, "DHL broke up the original shipment as packaged by PRC and repackaged the pieces of freight. After repackaging the shipment, DHL only loaded 481 of the 615 pieces onto the [Old Dominion] Truck." *Id.* at ¶ 14. As a result, only 481 pieces were delivered to Next F/X.[4] *Id.* at ¶ 15. Prior to the arrival of only a portion of the goods, Next F/X had received no notification that some of the goods had not been retrieved from the DHL warehouse near CVG. *Id.*

Next F/X alleges that it and PRC reached out to DHL about the missing goods, and "DHL failed to provide . . . any clear details as to the location or status of the undelivered pieces." *Id.* at ¶ 16. Eventually, around June 21, 2018, DHL indicated that when Old Dominion arrived to pick up the goods, it did not have room on its truck for the

---

[3]   The Complaint pleads that "On or about May 29, *2019*, the entire shipment . . . departed from VLC and arrived at CVG." (Doc. # 1 at ¶ 11) (emphasis added). Based on the other facts, however, it appears as though the shipment arrived on May 29, *2018*. The Court finds that the 2019 date in the Amended Complaint is a clear typographical error, but that "this error is not fatal to the Complaint" as the Amended Complaint is still discernable. *See Berry v. Office of the Fayette Cty. Sheriff*, No. 5:14-cv-356-DCR, 2014 WL 6390174, at *2 (E.D. Ky. Nov. 14, 2014).

[4]   Old Dominion had issued a bill of lading "for its carriage of Next FX's property from CVG to Columbus, MT," which Next F/X alleges incorrectly states the weight of the freight actually carried because Old Dominion "failed to deliver all of the goods it agreed to carry and as described on the bill of lading." (Doc. # 1 at ¶¶ 62–64).

entire shipment; DHL said, however, that Old Dominion picked up some of the shipment on June 8, 2018 and returned for the remaining 134 pieces of the shipment on June 9, 2018. *See id*. In reality, Old Dominion had not picked up the rest of the shipment, which was still sitting in the DHL warehouse. *Id.* at ¶ 17.

Once Next F/X became aware of the location of the remaining goods, it attempted to have Old Dominion pick them up so they could be delivered to Montana. *Id.* at ¶ 18. Next F/X alleges that Old Dominion attempted to pick up the goods on multiple occasions between July 5th and July 11th but Old Dominion would not take the goods because "DHL refused to provide the required [hazardous substance] placards." *Id.* at ¶ 19. Old Dominion eventually secured the necessary placards and attempted to retrieve the remaining goods, but "DHL then refused to release the cargo . . . claiming that storage charges had accrued against the cargo and those fees had to be paid before DHL would release the cargo." *Id.* at ¶ 20. Next F/X alleges that DHL is refusing to release the goods until Next F/X pays the storage fees, which Next F/X argues are "unreasonable, extortionate, and constitute an unfair and deceptive trade practice"; DHL claims these fees began accumulating on June 11, 2018. *Id.* at ¶ 23–24. Coppersmith "offered to pay a portion of the fees to secure the release of the cargo," but DHL refused to agree to such an arrangement. *Id.* at ¶ 22.

In light of these events, Next F/X filed suit against DHL and Old Dominion. (Doc. # 1). Next F/X alleges five claims against DHL: violation of the Montreal Convention, fraud, negligence, conversion, and a claim for punitive damages.[5] *Id.* Against Old

---

5       Despite being served, (Doc. # 9), and the time for responding having expired, *see* FED. R. CIV. P. 12(a), DHL has failed to answer or otherwise respond to Next F/X's Complaint. On December 9, 2019, Plaintiff moved for an entry of default against DHL pursuant to Federal Rule of Civil Procedure 55(a). (Doc. # 13). Magistrate Judge Candace J. Smith subsequently ordered

Dominion, Next F/X brings three claims: violation of the Carmack Amendment, negligence, and violation of KY. REV. STAT. § 355.7-301. *Id.* at ¶¶ 25–68. In addition to its request for statutory, exemplary, and punitive damages, Next F/X requests that it be awarded attorneys' fees. *Id.* at 11. Old Dominion responded to the Complaint with a Motion to Dismiss, arguing that Next F/X failed to state a claim under the Carmack Amendment upon which relief could be granted, that the state-law claims brought against it are preempted by the Carmack Amendment, and attorneys' fees are not recoverable under the Carmack Amendment. *See* (Doc. # 10). Briefing of the Motion is complete, (Docs. # 11 and 12), and the Motion is ready for disposition.

## II.   ANALYSIS

### A.   Standard of Review

Pursuant to the Federal Rules of Civil Procedure, pleadings which fail to "state a claim upon which relief can be granted" may be dismissed. *See* FED. R. CIV. P. 12(b)(6). In order to survive a motion to dismiss, a pleading must present "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not include "detailed factual allegations" but must offer more than "a formulaic recitation of the elements of a cause of action" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). In other words, the

---

the Plaintiff to submit a supplemental filing by December 26, 2019 explaining how Next F/X's alleged service upon DHL was proper. (Doc. # 14).

"allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In reviewing a motion to dismiss, a court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Cahoo v. SAS Analytics, Inc.*, 912 F.3d 887, 897 (6th Cir. 2019) (quoting *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016)).

### B. The Carmack Amendment

The Carmack Amendment is an amendment to the Interstate Commerce Act that "created a national scheme of carrier liability for loss or damages to goods transported in interstate commerce."[6] *Val's Auto Sales & Repair, LLC v. Garcia*, 367 F. Supp. 3d 613, 619 (E.D. Ky. 2019) (quoting *Exel, Inc. v. Transp., Inc.*, 807 F.3d 140, 148 (6th Cir. 2015)). "The Amendment restricts carriers' ability to limit their liability for cargo damage [and] [i]t makes a motor carrier fully liable for damage to its cargo unless the shipper has agreed to some limitation in writing." *Exel, Inc.*, 807 F.3d at 148 (citations omitted). "Though it might not be obvious from the text, 'Carmack's original premise is that the [initial] receiving carrier is liable for damage caused by the other [subsequent] carriers in the delivery chain.'" *CNA Ins. Co.*, 747 F.3d at 353 (alteration in original) (quoting *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 100, 106 (2010)). The current version "makes the final, or 'delivering,' carrier liable to the shipper as well." *Id.* "The Carmack Amendment only applies to shipping contracts that begin in one state and terminate in

---

[6] The Amendment as it relates to rail carriers is codified at 49 U.S.C. § 11706 and as to motor carriers at 49 U.S.C. § 14706. *CNA Ins. Co. v. Hyundai Merch. Marine Co., Ltd.*, 747 F.3d 339, 353 (6th Cir. 2014).

another.  It does not apply to shipping contracts where shipment begins and ends in the same state." *Strong v. Passport Auto Logistics, LLC*, No. 16-14169, 2018 WL 352891, at *4 (E.D. Mich. Jan. 10, 2018) (citing *CNA Ins. Co.*, 747 F.3d at 354).

The Amendment specifically deals with liability for "carrier[s] providing transportation or service," 49 U.S.C. § 14706, which includes coverage of "a motor vehicle . . . warehouse . . . property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both" and the "services related to that movement, including arranging for, receipt, delivery . . . storage, handling, packing, unpacking, and interchange of passengers and property."  49 U.S.C. § 13102(23) (defining "transportation").

### C. Federal Claim

Old Dominion argues that the federal claim under the Carmack Amendment must be dismissed because Next F/X has not alleged facts which make out a prima-facie case under the Amendment.  (Doc. # 10-1 at 8–9).  Next F/X disagrees.  (Doc. # 11 at 5–9).

#### 1. Interstate Requirement

There is a threshold requirement for application of the Amendment to a particular scenario that the Court must consider first; the Carmack Amendment only applies to *interstate* commerce.  *Exel, Inc.*, 807 F.3d at 148.  The Amendment does not "apply to a shipment originating overseas under a *single through bill of lading*" which "covers the transport into an inland location in the United States." *Kawasaki*, 561 U.S. at 100, 103 (emphasis added).[7]  "A through bill of lading covers both the ocean and inland portions

---

[7] Though *Kawasaki* dealt with rail transportation specifically, its holding and reasoning applies to the portion of the Carmack amendment that covers motor carriers and freight forwarders as well.  *Royal & Sun All. Ins., PLC v. Ocean World Lines, Inc.*, 612 F.3d 138, 145–46 (2nd Cir. 2010).

of the transport in a single document." *Id.* at 93. For example, a through bill of lading was employed in *Kawasaki*, when the cargo owners contracted with "K" Line to "arrange delivery of the good from China to their final destinations in the United States, by any mode of transportation of 'K' Line's choosing." *Id.* at 93. In other words, "'K' Line . . . arranged for the entire journey" and subcontracted with a rail company in the United States for land shipment once the goods arrived in the United States. *Id.* at 94–95.

The Carmack Amendment may, however, apply to an interstate portion of international transportation if the interstate portion of the carriage is completely separate from the foreign portion. *See Reider v. Thompson*, 339 U.S. 113, 117 (1950). Specifically, the Amendment applies if the domestic carrier is a "receiving carrier" as defined by the Amendment. *Kawasaki*, 561 U.S. at 103. "[A] 'receiving [] carrier' [under the Amendment] is the initial carrier to receive the cargo from the shipper 'at the journey's point of origin' and the only carrier that must issue a bill of lading pursuant to Carmack's requirements." *CNA Ins. Co.*, 747 F.3d at 362 (quoting *Kawasaksi*, 561 U.S. at 101). "A carrier does not become a receiving carrier simply by accepting goods for further transport from another carrier in the middle of an international shipment under a through bill." *Id.* at 364.

A domestic carrier accepting goods from a foreign carrier may, however, be a receiving carrier if the domestic portion of the transportation is distinct from the international portion. *See Reider*, 339 U.S. at 117. For example, in *Reider* there was a contract for ocean transport of the goods from Argentina to New Orleans, and a "new, separate, and distinct domestic contract of carriage" for rail transportation from New Orleans to Boston. *Id*. In that case the Supreme Court found that "it is not significant that

7

the shipment . . . originated in a foreign country, since the foreign portion of the journey terminated at the border of the United States" and held that the Carmack Amendment did apply to the domestic portion of the carriage. *Id.*; *see also Kawasaki*, 561 U.S. at 105 (The situation *Kawasaki* would have been different had "the bills of lading for the overseas transport ended at this country's ports and the cargo owners then contracted with [the railway] to complete a new journey to an inland destination in the United States. Under those circumstances [the railway] would have been the receiving rail carrier and would have been required to issue a separate Carmack-compliant bill of lading to the cargo owners.").

As this shipment originated in Spain with its final destination in Montana, (Doc. # 1 at ¶¶ 7–9), the Court must consider the threshold question of whether the Carmack Amendment could even apply to the situation before the Court. In order to make this determination, the Court must decide if the facts alleged are sufficient to suggest that Old Dominion was a receiving carrier under Carmack. This determination rests on whether the goods were shipped from Spain to Montana under a through bill of lading or whether the international and domestic pieces of the transportation were separate. While the bill of lading is not attached to the Complaint, based on the allegations therein, it does not appear as though the goods were shipped under a through bill of lading covering "both the ocean and inland portions of the transport in a single document." *Kawasaki*, 561 U.S. at 93. Rather, the international and domestic portions of the carriage appear to be distinct. In the Complaint, Plaintiff alleges that "PRC arranged for DHL to transport the shipment from the airport in Valencia, Spain ("VLC") to the Cincinnati Northern Kentucky International Airport." (Doc. # 1 at ¶ 8). Once the shipment arrived at CVG and cleared

8

customs, "Next FX through Coppersmith, contracted with [Old Dominion] to transport the shipment by truck from CVG to Columbus, Montana." *Id.* at ¶ 12.

Plaintiff effectively alleges that, like in *Reider*, there were two separate elements of the carriage—a leg from Spain to CVG arranged by PRC and a second, separately-arranged leg from CVG to Montana arranged by Next F/X and the freight broker, Coppersmith. This is not a case like *Kawasaki* where an initial carrier was responsible for carriage—either on its own or through subcontracts—from an international destination to an inland destination in the United States. Here, essentially, "the overseas transport ended at [CVG] and the cargo owners then contracted with [Old Dominion] to complete a new journey to [Montana]." *Kawasaki*, 561 U.S. at 105. Under such circumstances, Old Dominion "would have been the receiving rail carrier and would have been required to issue a separate Carmack-compliant bill of lading to the cargo owners." *Id.* Thus, Next F/X has alleged facts sufficient to allege that the Carmack Amendment applies to the interstate portion of the transportation, the portion for which Old Dominion was responsible.

### 2. *Prima-Facie Case*

As the threshold requirement is met, the Court must next determine if the Plaintiff has sufficiently alleged a claim under the Carmack Amendment. Three elements must be shown in order to make out a prima-facie claim under the Carmack Amendment: "delivery in good condition, arrival in damaged condition, and the amount of damages." *Missouri Pac. R. R. Co. v. Elmore & Stahl*, 377 U.S. 134, 138 (1964). Should those three elements be shown, the burden shifts to the defendant to demonstrate it was not negligent and the damage was caused by one of five enumerated causes. *Id*. Making out a prima-

9

facie case under the Amendment is a low burden. *Id.* Here, Next F/X has sufficiently alleged facts to make out a prima-facie case under the Carmack Amendment.

First, the allegations in the Complaint are sufficient to show that the goods were delivered to the receiving carrier—in this case Old Dominion—in good condition. *See CNA Ins. Co.*, 747 F.3d at 353 (The first element requires that the "initial ('receiving') carrier receive[] the cargo in good condition."). Old Dominion disputes this, arguing that because the company never took possession of all of the goods, delivery to Old Dominion was not completed. (Doc. # 10-1 at 8–9). Old Dominion, however, is misguided.

Delivery under the Carmack Amendment does not require possession. "*Generally speaking*, delivery occurs when the possession, custody, and control of the goods involved have been surrendered to and accepted by the carrier," *Illinois Cent. R.R. v. Moore*, 228 F.2d 873, 877 (6th Cir. 1956) (emphasis added), but "[t]he intention of the parties defines what constitutes the scope of delivery," *Eddie Bauer Inc. v. Focus Transp. Servs.*, 881 F. Supp 1174, 1179 (N.D. Ill. 1995); *see also Am. Synthetic Rubber Corp. v. Louisville & N. R. Co.*, 422 F.2d 462, 466 (6th Cir. 1970) (citing *Ga., Fla. & Ala. R.R. Co. v. Blish Milling Co.*, 241 U.S. 190, 195 (1916) (explaining that the Supreme Court had noted that "delivery 'must mean delivery as required by the contract'")). For example, "[t]he parties may agree that the property be deposited for transportation at any particular place"; this form of constructive delivery could be sufficient delivery under the Carmack Amendment depending on the intention of the parties. *Illinois Cent. R.R.*, 228 F.2d at 877; *see also John Morrell & Co. v. Frozen Food Exp., Inc.*, 700 F.2d 256, 258 (5th Cir. 1983) (finding that the district court was not clearly erroneous in holding that constructive

delivery did not occur and therefore a prima-facie case under the Carmack Amendment was not established).

Here, Next F/X alleges that Old Dominion was "sent two Delivery Orders," which instructed Old Dominion to pick up the shipment from DHL, (Doc. # 1 at ¶ 12), and that the goods were "tendered" to Old Dominion, *id.* at ¶ 35. Old Dominion arrived on June 8, 2018 to get the shipment as instructed by the Delivery Orders. *Id.* at ¶ 13. Additionally, Next F/X alleges that Old Dominion did not pick up the entire shipment because the truck Old Dominion intended to use to complete the carriage did not have enough space on it. *Id.* at ¶ 16. It is alleged, however, that Old Dominion issued a bill of lading for the entirety of the shipment. *Id.* at ¶ 62–64.

Despite the fact that Old Dominion did not have physical possession of all of the goods, reading the Complaint in the light most favorable to Next F/X, *Cahoo*, 912 F.3d at 897, Next F/X has adequately pled that the goods were delivered to Old Dominion. The fact that Old Dominion was instructed, via Delivery Orders, to pick up the tendered goods, but Old Dominion was unable to transport all of them due to the size of its truck indicates that Old Dominion had at least some level of control over all of the goods. Even if Old Dominion did not have physical possession of all of the goods, it appears from the facts pled that the goods were, at a minimum, constructively delivered to Old Dominion and therefore were delivered within the meaning of the Amendment.

Next, there is no question that there was damage—in the form of missing goods—when the shipment was delivered, (Doc. # 1 at ¶ 15), which satisfies the second element of a Carmack Amendment claim. *See Intercargo Ins. Co. v. Universal Am-Can*, No. 97C8642*,* 1998 WL 26172, at *1 (N.D. Ill. Jan. 13, 1998) (indicating that the second

element of the prima-facie case can be satisfied when goods are "either not delivered or delivered in damaged condition"); *United States v. Seaboard Coast Line R.R.*, 384 F. Supp. 1103, 1107 (E.D. Va. 1974) (citing *Missouri Pac. R.R. Co.*, 377 U.S. at 137 ("[I]n the ordinary case to which the Carmack Amendment is applicable, the plaintiff need only prove, in essence, that the goods were received by the carrier at the point of origin but were delivered at the destination in a damaged condition or with a portion or all of the goods missing.").

Finally, Next F/X is able to point to specific damages that have arisen as a result of Old Dominion's actions which delayed delivery and resulted in accruing storage fees, (Doc. # 1 at ¶ 21), so the third element has been met. Accordingly, Next F/X has met the low bar necessary to make out a prima-facie claim under the Carmack Amendment. *See CNA Ins. Co.*, 747 F.3d at 353. Thus, Old Dominion's Motion to Dismiss the Carmack Amendment claim is **denied**.

### D. Carmack Preemption

In asserting that the state and common-law claims against it should be dismissed, Old Dominion argues that the claims of negligence and breach of KY. REV. STAT. § 355.7-301 are preempted by the Carmack Amendment. (Doc. # 10-1 at 3–7). Next F/X argues, however, that the state-law claims fall within an exception to Carmack preemption. (Doc. # 11 at 3–5).

The Supreme Court has found that "with the Carmack Amendment, [Congress] fully preempted state law concerning the liability of interstate rail and road carriers." *CNA Ins. Co.*, 747 F.3d at 355 (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913)). "Almost every detail of the subject is covered so completely that there can be no

12

rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it." *Adams Express*, 226 U.S. at 505–06. The Sixth Circuit joins the majority of circuits in finding that the Amendment specifically "preempts state and common law claims and remedies for cargo damaged in interstate transport." *Val's Auto Sales & Repair*, 367 F. Supp. 3d at 619 (quoting *Jackson v. Brook Ledge, Inc.*, 991 F. Supp. 640, 644 (E.D. Ky. 1997) (collecting cases)).

A wide variety of state and common-law claims have been found to be preempted by the Carmack Amendment by courts within this Circuit, including claims for the following: breach of contract, negligence, indemnification, contribution, and recklessness. *See Re-Borne, Inc. v. Panther II Transp., Inc.*, No. 3:17-cv-23-GFVT, 2018 WL 1526075, at *2 (E.D. Ky. Mar. 28, 2018) (claims for breach of contract, breach of implied duty of good faith and fair dealing, and negligence arising from damage to the goods caused by the goods being left on the loading lock are preempted); *DHL Holdings (USA), Inc. v. Expediting Co., Inc.*, No. 5:16-cv-208-KSF, 2008 WL 11464721, at *1, *4 (E.D. Ky. June 4, 2008) (finding claims for breach of contract, negligence, indemnification, and contribution to be preempted in a damage-to-goods-during-transit action); *Jackson*, 991 F. Supp. at 642–44 (finding that the negligence, recklessness, gross-negligence, and breach-of-agreement claims arising from damage to cargo must be dismissed under Carmack preemption). Claims related to damages "sustained during storage which is merely incidental to the transportation of goods" are similarly subject to Carmack preemption. *Diamond Transp. Grp., Inc. v. Emerald Logistics Sols., Inc.*, No. 05-cv-3828, 2006 WL 1789036, at *4–5 (E.D. Pa. June 21, 2006).

The preemption is not only limited to claims for damage to the goods themselves, but also applies when the goods are not directly damaged. For example, claims and damages arising out of a delay of goods are preempted by the Carmack Amendment. *See Se. Express Co. v. Pastime Amusement Co.*, 299 U.S. 28, 29 (1936) ("The statute . . . applies to damages caused by delay in making delivery."); *N.Y., Phila. & Norfolk R.R. Co. v. Peninsula Produce Exch. of Md.*, 240 U.S. 34, 39 (1916) ("The duty to transport with reasonable despatch is none the less an integral part of the normal undertaking of the carrier."); *Am. Synthetic Rubber Corp.*, 422 F.2d at 465–66 ("The carrier is liable under the Act for what is delivered as well as when it is delivered."); *see also Tenn. Wholesale Nursery v. Wilson Trucking Co.*, No. 3:12-cv-00937, 2013 WL 5236733, at *2 (M.D. Tenn. Sept. 17, 2013) ("Claims for delays in delivery of property in violation of contract—even without allegations of loss or damage to the property—are also cognizable under the Amendment.").

Similarly, claims for misdelivery[8] are also preempted by the Carmack Amendment. *Am. Synthetic Rubber Corp.*, 422 F.2d at 462, 466; *see also Hauck v. Bekins Van Lines*, No. H-10-3314, 2010 WL 4705264, at *2–3 (S.D. Tx. Nov. 12, 2010) (finding a claim related to failure to pick up goods to be preempted by the Carmack Amendment). Additionally, even a claim for fraud premised on the allegation that "the contract between the parties was based on the defendant's fraudulent misrepresentations that occurred before the issuance of the Bill of Lading and the placement of the shipment into interstate commerce" is preempted by the Carmack Amendment. *Vitramax Grp., Inc. v. Roadway*

---

[8] "Delivery of goods not according to contractual specifications; esp., delivery to the wrong person or delivery of goods in a damaged condition." *Misdelivery*, BLACK'S LAW DICTIONARY (11th ed. 2019).

*Exp. Inc.*, No. Civ.A.05-87-C, 2005 WL 1036180, at *1 (W.D. Ky. May 3, 2005). These prior decisions exemplify that the Amendment is "comprehensive enough to embrace all damages resulting from failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination." *Am. Synthetic Rubber Corp.*, 422 F.2d at 465 (quoting *N.Y., Phila. & Norfolk R.R. Co.*, 240 U.S. at 38).

There is, however, an exception to Carmack preemption when "claims [are] unrelated to the loss of, or damage to, goods in interstate commerce." *Val's Auto Sales & Repair*, 367 F. Supp. 3d at 620; *see also Gordon v. United Van Lines*, 130 F.3d 282, 285, 289–90 (7th Cir. 1997) (finding that Carmack preempts the breach-of-contract, willful-and-wanton misconduct, and fraud claims but does not preempt the intentional-infliction-of-emotional-distress claim arising from the destruction of valuable personal possessions). In other words, "claims survive this preemption only when they are 'separate and independently actionable harms that are distinct from the loss of, or the damage to, the goods.'" *Secura Ins. v. Old Dominion Freight Line*, No. 3:18-cv-780-CRS, 2019 WL 1114887, at *2 (W.D. Ky. Mar. 11, 2019) (quoting *Gordon*, 130 F.3d at 289). The exception is quite narrow, however, as the preemption "embraces 'all losses resulting from any failure to discharge a carrier's duty as to any party of the agreed transportation.'" *DHL Holdings (USA), Inc.*, 2008 WL 11464721, at *4 (quoting *Ga., Fla. & Ala. R.R. Co.*, 241 U.S. at 196); *see also Secura Ins.*, 2019 WL 1114887, at *2 (W.D. Ky. Mar. 11, 2019) ("Carmack Amendment[] preemption is extremely broad.").

Here, Plaintiff brings a common-law negligence claim against Old Dominion. (Doc. # 1 at ¶¶ 50–53). Specifically, Next F/X alleges that Old Dominion was negligent "by failing to provide the necessary resources to effect carriage of the entirety of Next FX's

15

shipment as it had agreed to do" and "by failing to notify Next FX that it did not pick up the entire shipment and by failing to disclose to Next FX the location of its property." *Id.* at ¶ 52. Next F/X brings a second state-law claim for violation of KY. REV. STAT. § 355.7-301, *Id.* at ¶¶ 61–65, which, among other things, creates "liability for nonreceipt or misdescription" of goods on a bill of lading. KY. REV. STAT. § 355.7-301. Specifically, Next F/X alleges that the "bill of lading issued by [Old Dominion] erroneously stated the weight of the goods that were to be carried and the erroneous bill of lading was relied upon by Next FX" and that Old Dominion "failed to deliver all of the goods it agreed to carry and as described on the bill of lading." (Doc. # 1 at ¶¶ 63–64).

In essence, both claims are based on Old Dominion's alleged "failure to discharge [its] duty with respect to [a] part of the transportation to the agreed destination." *Am. Synthetic Rubber Corp.*, 422 F.2d at 465 (quoting *N.Y., Phila. & Norfolk R.R. Co.*, 240 U.S. at 38); *see also* 49 U.S.C. § 13102(23) (including "arranging for, receipt, delivery . . . storage, handling, packing, unpacking, and interchange of passengers and property" in the definition of "transportation" for purposes of the Carmack Amendment). The claims are not "separate and independently actionable harms that are distinct from the loss of, or the damage to, the goods." *Secura Ins.*, 2019 WL 1114887, at *2 (quoting *Gordon*, 130 F.3d at 289). Rather, both claims are directly related to the losses sustained by Next F/X from Old Dominion's alleged failure to deliver a portion of the goods as it was contracted to do. As the claims arise from Old Dominion's alleged "failure to provide [Next F/X] with particular transportation and delivery services . . . [the] claims fall squarely within the preemption coverage of the Carmack Amendment." *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1247–48 (11th Cir. 2002) (finding claims of fraud, negligence,

wantonness, and willfulness arising from a failure to deliver goods to be preempted). Thus, the state and common-law claims against Old Dominion must be **dismissed** as they are preempted by the Carmack Amendment, and Old Dominion's Motion on this ground is **granted**.

### E. Attorneys' Fees

Finally, the Court considers Old Dominion's argument that Plaintiff's request for attorneys' fees must be dismissed, as attorneys' fees are not recoverable under the Carmack Amendment. (Doc. # 10 at 7–8). It appears that Next F/X does not oppose this aspect of Old Dominion's Motion to Dismiss. *See generally* (Doc. # 11). "When a plaintiff 'fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.'" *Purefide v. Thompson*, No. 3:13-cv-66-GFVT, 2014 WL 4661955, at *2 (E.D. Ky. Sept. 18, 2014) (quoting *Scott v. Tennessee*, 878 F.2d 382, at *2 (6th Cir. 1989) (unpublished table decision)). As Next F/X did not to respond to this portion of Old Dominion's Motion, it has waived opposition to this aspect of the Motion and the Motion to Dismiss as to Plaintiff's request for attorneys' fees is **granted**.[9]

---

[9] This aspect of the Motion would otherwise be granted on its merits. While there is very limited case law on this issue within the Sixth Circuit, *see Custom Rubber Corp. v. ATS Specialized, Inc.*, 633 F. Supp. 2d 495, 518–19 (N.D. Ohio 2009) (noting in 2009 that "[n]either the Sixth Circuit nor the Northern District of Ohio had ruled on [the] issue [of attorneys' fees under the Carmack Amendment]"), it has been held that, based on persuasive case law and the plain language of the Carmack Amendment, "an award of attorneys' fees ordinarily should be unavailable under . . . the Carmack Amendment." *Id.* at 519. This proposition further supports the granting of this aspect of the Motion.

III.  **CONCLUSION**

Accordingly, for the reasons set forth herein, **IT IS ORDERED** as follows:

(1)  Old Dominion's Motion to Dismiss (Doc. # 10) is **GRANTED IN PART** and **DENIED IN PART**;

   (a)  The Motion is **GRANTED** as to the common-law claim against Old Dominion (Negligence on the part of Old Dominion), the state-law claim against Old Dominion (Breach of Ky. Rev. Stat. § 355.7-301), and the request for attorneys' fees; and

   (b)  The Motion is **DENIED** as to the federal claim against Old Dominion (Violation of the Carmack Amendment);

(2)  Within **fourteen (14) days** of the entry of this Order, and pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Old Dominion **shall file an Answer** to the Complaint.

This 16th day of December, 2019.

Signed By:
*David L. Bunning*  DB
United States District Judge

K:\DATA\ORDERS\Cov2019\19-76 ODFL MTD.docx